## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT HOWARD,** )<br>**#M-32189,** )<br> )<br>**Plaintiff,** )<br> )<br>**vs.** )<br> )<br>**STEPHEN DUNCAN,** )<br>**DEREK JOHNSON, JAMES DANIELS,** )<br>**UNKNOWN LIEUTENANT,** )<br>**MS. YOUNG, and** )<br>**MS. KIMBERLY,** )<br> )<br>**Defendants.** ) | **Case No. 16-cv-00301-SMY** |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Robert Howard, currently incarcerated at Lawrence Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to

1

relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

All of the events giving rise to this action occurred while Plaintiff was incarcerated at Lawrence Correctional Center ("Lawrence"). The following facts are relevant to the Court's threshold review:

On September 11, 2015, Defendant Johnson, a correctional officer, was passing out lunch trays on Plaintiff's housing unit. (Doc. 1, p. 3). When Defendant Johnson finished passing out trays, Plaintiff asked Defendant Johnson if he would pick up Plaintiff's laundry from the laundry room. Defendant Johnson told Plaintiff, "Hell no." *Id*. Plaintiff had been trying to get his laundry returned over the past few days and had asked other correctional officers for help, but they had also refused to assist Plaintiff. *Id*. Plaintiff told Defendant Johnson that he would like to speak with a lieutenant and that he was going to take the chuck hole hostage until he got his

laundry back or was able to speak with a lieutenant. *Id*. Defendant Johnson responded, "I don't give a fuck." Plaintiff then put his arm outside of the hole. Defendant Johnson began collecting lunch trays and when he reached Plaintiff's cell, he rammed the food cart into Plaintiff's hand, causing Plaintiff's hand to bend backwards with tremendous pain. Defendant Johnson then said, "How does your hand feel bitch[?]" Defendant Johnson and Defendant Daniels, another correctional officer who had been present during the incident, then collected the lunch trays and left the wing. *Id*.

A little while later, Defendant Daniels returned and spoke with Plaintiff. When Defendant Daniels denied having witnessed the incident, Plaintiff again asked to speak with a lieutenant. *Id*. at 4. Defendant Daniels left to speak with a lieutenant. When he returned, Daniels told Plaintiff the only way the lieutenant would come speak to him was if Plaintiff returned his lunch tray and removed his arm from the chuck hole. Plaintiff refused and said that he wouldn't comply until he could speak with a lieutenant and get some medical attention for his hand. *Id*. Defendant Daniels then left.

A few minutes later, Defendant Johnson returned to Plaintiff's cell carrying a toilet plunger that he had just used to unclog the toilet in another cell. *Id*. Johnson asked Plaintiff to return his lunch tray and put his arm back inside the cell so that he could lock up the chuck hole. Plaintiff again refused and demanded to speak with a lieutenant so that he could get some medical attention for his hand. John replied that the lieutenant was busy and then proceeded to take the plunger out that was dripping with urine and feces and show it to Plaintiff. *Id*. Plaintiff asked Johnson to remove the plunger, but Johnson threatened that if Plaintiff would not remove his arm, he was going to put the plunger all over Plaintiff's arm. *Id*. Plaintiff again refused and Johnson proceeded to rub the plunger, which was covered in urine and feces, all over Plaintiff's

arm.  *Id*.  Another unidentified correctional officer was present and did nothing to stop Johnson. Eventually Johnson stopped and left.  *Id*. at 5.

About 10 minutes later, Defendant Daniels returned to Plaintiff's cell with Plaintiff's laundry.  *Id*. at 5.  Daniels told Plaintiff that the laundry was a "peace tree" and asked Plaintiff to give him the trays and remove his arm from the hole.  Plaintiff refused, once again, and continued to refuse until a lieutenant came to his cell to speak with him.  *Id*. at 6.  Defendant Unknown Lieutenant came to Plaintiff's cell and Plaintiff explained to him what had happened. Unknown Lieutenant then told Plaintiff to cuff-up.  *Id*.  Plaintiff complied, but asked to speak with someone from Internal Affairs so that he could report the incident.  The Unknown Lieutenant ignored Plaintiff's request and, instead, took Plaintiff to the healthcare unit.  *Id*.

At the healthcare unit, Plaintiff was seen by Defendant Kimberly, the nurse on duty.  *Id*. Plaintiff asked Defendant Kimberly to examine his hand and explained to her that he also needed to be tested for Hepatitis C since arm had just come in contact with urine and feces.  *Id*. Defendant Kimberly refused to provide any treatment for Plaintiff's hand. She insisted that Plaintiff's hand was sore from working out, even though Plaintiff had just told her about Defendant Johnson ramming the food cart into his hand.  *Id*.  As for the Hepatitis C test, Defendant Kimberly told Plaintiff to put in a request slip.  *Id*.  Defendant Unknown Lieutenant then took Plaintiff to segregation.  *Id*.

Over the next several weeks while he was in segregation, Plaintiff submitted several request slips to the healthcare unit.  *Id*. at 7.  Each time, Plaintiff requested a Hepatitis C test and medical attention for his hand. *Id*.  These requests went unanswered.  In addition, Plaintiff spoke to the mental health counselors about the incident involving Defendant Johnson and requested their assistance with obtaining medical attention.  Plaintiff also submitted a request slip to

Defendant Duncan (warden) and the assistant wardens at the institution advising them that he planned to press charges against Defendant Johnson for assaulting him.

Finally, on October 20, 2015, Plaintiff was seen by Defendant Young, a nurse, but she denied his request for a Hepatitis C test because the feces and urine on the plunger had not come into contact with his mouth.  *Id*. at 8.

**<u>Discussion</u>**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to organize the claims in Plaintiff's *pro se* Complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

Before proceeding with the threshold review of each claim, a word about the named Defendants is in order.  Although Plaintiff has outlined four counts, he has failed to specify which Defendants he seeks to hold liable under each of these counts.  The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).    Based on the facts set forth in the statement of the claim, the Court has endeavored to identify specific defendants related to each of the four counts.

Aside from failing to associate specific defendants with specific claims, Plaintiff has also named as defendants the Unknown Lieutenant and Warden Duncan, but  has failed to allege how either of these Defendants was personally responsible for the any of the alleged constitutional violations.   Although both of these Defendants are supervisors, the doctrine of respondeat superior does not apply to § 1983 actions.  In order to be liable a defendant must be alleged to be personally responsible for the constitutional violation.  *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).  Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation.  *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000).  Moreover, prison officials who are made aware of an ongoing constitutional violation and have a reasonable opportunity to prevent the violation, yet deliberately or recklessly fail to do so may also be held personally liable.  *See Childress v. Walker*, 787 F.3d 433, 439-40 (7th Cir. 2015); *see also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).

In the present action, Plaintiff does not allege that either Defendant Duncan or the Unknown Lieutenant were present, personally involved in, condoned, or had an opportunity to prevent any of the alleged violations discussed below.  Personal liability does not attach in a § 1983 action simply because they were supervisors.  As such, Defendants Duncan and Unknown Lieutenant shall be dismissed from this action without prejudice.

**Count 1:**       **Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). The "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). When force is used maliciously and sadistically to cause harm, "contemporary standards of decency are always violated . . . Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff alleges that Defendant Johnson violated his right to be free from cruel and unusual punishment when Johnson rammed the food cart into Plaintiff's hand and then took a plunger covered in urine and feces and rubbed it on Plaintiff's arm. Mindful that the "core judicial inquiry" is not the extent of the injury, but rather the nature of the force, *see Wilkins,* 599 U.S. at 40, the Court finds that Plaintiff has articulated a colorable excessive force claim against Defendant Johnson.

**Count 2:**       **Failure to Intervene**

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994). An inmate asserting a failure to intervene claim under § 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer, must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to

intervene to prevent the harm from occurring." *Abdullahi v. City of Madison,* 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang v. Hardin,* 37 F.3d 282, 284 (7th Cir.1994)).

Here, Plaintiff claims that "Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of [Plaintiff], as set forth above had they been so inclined." (Doc. 1, p. 10).  However, beyond this vague and conclusory allegation, Plaintiff did not set forth facts that would even possibly suggest that any of the named Defendants, besides Defendant Daniels, were present and had any opportunity *at all* to intervene during the food cart and plunger incidents.  Therefore, the Court will only consider this claim as it relates to Defendant Daniels.

Plaintiff alleges that Defendant Daniels was present but failed to intervene when he observed Defendant Johnson use excessive force when he rammed the food cart into Plaintiff's hand.  The circumstances surrounding the alleged use of excessive force and a defendant's ability to intervene are questions of fact that typically cannot be resolved at this stage.  *See Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) ("Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.")  Here, however, Plaintiff has described only one extremely brief act of excessive force during which Defendant Daniels was present: Defendant Johnson ramming the food cart into Plaintiff's hand.   Even assuming that Defendant Daniels was standing right next to Defendant Johnson when the incident occurred, it is not plausible that he would have had sufficient time to intervene or been capable of preventing the alleged harm to Plaintiff's hand.  Furthermore, according to the Complaint, Defendant Daniels made every effort to de-escalate the situation after the incident occurred: he made contact with a lieutenant and got

him involved; he attempted to discuss the situation calmly with Plaintiff; and eventually he retrieved Plaintiff's laundry and gave it to him as a "peace tree." The Complaint states that an unidentified correctional officer, not named as a defendant in this action, was present when Defendant Johnson rubbed the plunger all over Plaintiff' arm. However, the Complaint does not suggest that Defendant Daniels was present when that act occurred. Even viewing all facts in favor of Plaintiff, as the Court is required to do at this stage, Plaintiff has not sufficiently alleged a failure to intervene claim against Defendant Daniels.

**Count 3:        Denial of Medical Treatment**

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To establish an Eighth Amendment medical needs claim, a plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Moreover, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir. 2010)).

To establish deliberate indifference, a plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d 742, 753 (7th Cir. 2011). *See also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Allegations that a prison official knowingly exposed an inmate to an infectious disease that might cause him future harm does state a claim of deliberate indifference to a serious medical need. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997)); *see also McRoy v. Sheahan*, 188 Fed. Appx. 523, 525 (7th Cir. 2006).

Here, Plaintiff alleges that Defendant Johnson took a plunger covered in urine and feces and rubbed it on his arm, thereby potentially exposing him to an infectious disease, Hepatitis C. This allegation is sufficient to state a deliberate indifference claim against Defendant Johnson.

In addition, Plaintiff alleges that Defendant Kimberly, the nurse he saw the day of the incident, and Defendant Young, the nurse he saw several weeks later, refused to treat his hand injury. Furthermore, both nurses refused to test Plaintiff for Hepatitis C. Whether Plaintiff's hand injury was in fact serious and whether the nurses acted with deliberate indifference by refusing to test Plaintiff for Hepatitis C are questions of fact that cannot be resolved at this stage. Accordingly, Plaintiff may also proceed on his deliberate indifference to a serious medical need claim against Defendants Young and Kimberly.

**Count 4:       Intentional Infliction of Emotional Distress**

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §

1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's state law claim arises out of the same events that gave rise to his federal claim. As such, the Court will exercise supplemental jurisdiction over this additional state law claim. Plaintiff may proceed against Defendant Johnson on his Illinois intentional infliction of emotional distress claim.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) remains **PENDING** and shall be referred to United States Magistrate Judge Frazier for a decision.

Plaintiff's motion for service of process at government expense (Doc. 4) is **DENIED AS MOOT**. Plaintiff has already been granted leave to proceed *in forma pauperis* (Doc. 6). It is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff may proceed on his excessive force claim **(COUNT 1)** against Defendant **JOHNSON**; his serious medical needs claim **(COUNT 3)** against Defendants **JOHNSON, KIMBERLY,** and **YOUNG**; and his intentional infliction of emotional distress claim **(COUNT 4)** against Defendant **JOHNSON**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice. Defendants **DUNCAN, DANIELS,** and **UNKNOWN LIEUTENANT** are **DISMISSED** without prejudice from this action.

The Clerk of Court shall prepare for Defendant **JOHNSON, KIMBERLY,** and **YOUNG**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings, including a determination of Plaintiff's motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 12, 2016**

s/ STACI M. YANDLE
**United States District Judge**